IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

STEPHEN LEE JOHNSON

   Plaintiff

     v.

SUSAN BOGGS, TAMMY
GRIENER, PRISCILLA
KILLINGSWORTH, CHARLES
O'NEILL, and TAREY B. SCHELL,
in their individual and official
capacities, and TERRELL MOODY,
and JAMES THOMAS, in their
official capacities,

   Defendants.

CIVIL ACTION
NO. 3:05-CV-036-JTC

# **O R D E R**

Pending before the Court are Plaintiff's Motion for Preliminary

Injunction [# 2], Plaintiff's Motion to Strike [# 22] and several motions to

dismiss by Defendants [#'s 14, 17, 44 & 45].  Plaintiff's Complaint requests an

Order enjoining the enforcement of several alleged prior restraints on

Plaintiff's speech.  Plaintiff fails to allege facts necessary to show Defendants

Susan Boggs and Charles O'Neill acted under color of law.  With regard to

Magistrate Judge Killingsworth, Plaintiff asks this Court to act improperly as

an appellate court reviewing orders of the Pike County Magistrate Court.

Therefore, the Court **GRANTS** Defendants' motions to dismiss [#'s 14, 17, 44 & 45]. The Court **GRANTS** Plaintiff's motion to strike [# 22].

## I.    Procedural Background

Plaintiff Stephen Lee Johnson initiated this action on April 27, 2005, requesting an Order declaring Defendants' alleged prior restraint of his speech unconstitutional under the United States and Georgia Constitutions and seeking to enjoin Defendants from enforcing these alleged prior restraints.  Contemporaneously, Plaintiff filed a motion for preliminary injunction [# 2].  Defendants Susan Boggs and Charles O'Neill immediately moved to dismiss the Complaint [# 14 & 17].  Defendant O'Neill also submitted an affidavit in support of his motion to dismiss, which Plaintiff moved to strike [# 22].  Defendants Priscilla Killingsworth, Terrell Moody and James Thomas each later moved to dismiss Plaintiff's Complaint [#'s 44 & 45].

Subsequently, Plaintiff voluntarily dismissed Defendants Tarey B. Schell [# 52] and Tammy Griener [# 55].  The Court held a hearing on Defendants' motions to dismiss on March 3, 2006.

## II.    Motion to Dismiss Standard

The purpose of a Rule 12(b)(6) motion is to determine whether the plaintiff's complaint states a claim for relief.  "The rule is not designed to

2

strike inartistic pleadings or to provide a more definite statement to answer

an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited

primarily to the face of the complaint and attachments thereto." Brooks v.

Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  A

complaint should not be dismissed for failure to state a claim "unless it

appears beyond doubt that the plaintiff can prove no set of facts" which would

entitle plaintiff to relief.  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99,

102 (1957).  In considering a motion to dismiss, the Court must accept the

complaint's allegations as true and construe them in the light most favorable

to the plaintiff.  Powell v. United States, 945 F.2d 374, 375 (11th Cir.1991).

## III.    The Factual Allegations in the Complaint

The following is a summary of the relevant facts, accepting Plaintiff's

well-pled factual allegations as true and construing them in a light most

favorable to him, as the Court is required to do at this stage of the

proceedings.[1]

### A.    The Defendants

Plaintiff brings this action against a number of Defendants in their

individual and official capacities.  Susan Boggs is a supervisor with DFACS

---

[1]  Because Plaintiff expressly incorporates the exhibits filed in support of his
motion for preliminary injunction into his Complaint, the Court also considered
these exhibits in ruling on the motions to dismiss.

(Compl. ¶¶ 16, 24; Pl.'s Ex. C), and Plaintiff brings this action against Defendant Boggs individually and in her official capacity (Compl. ¶ 8). Charles O'Neill is a private attorney (Compl. ¶ 23; Pl.'s Ex. B), and Plaintiff brings this action against Defendant O'Neill individually and in his official capacity (Compl. ¶ 7). Priscilla Killingsworth is a Magistrate Judge for Pike County, Georgia, and Plaintiff brings this action against Magistrate Judge Killingsworth individually and in her official capacity. (Compl. ¶ 5.) Terrell Moody is the Coroner of Pike County. (Compl. ¶ 10.) James Thomas is the Sheriff of Pike County. (Compl. ¶ 9.) Plaintiff brings this action against Sheriff Thomas and Coroner Moody for equitable relief in their official capacities. (Compl. ¶¶ 9-10.)

  B. *The factual allegations supporting the claims against Defendants O'Neill, Killingsworth, Moody, and Thomas*

  Plaintiff is the founder of Advocates for Rights and Liberties of America ("ARLA"), a group he created to combat child abuse and express his views on the effectiveness of the Georgia Department of Family and Children's Services ("DFACS"). (Compl. ¶¶ 11-12.) ARLA maintains a website containing critical views of DFACS. (Compl. ¶¶ 11,14.)

On the ARLA's website, Plaintiff posted excerpts from an August 17, 2004 article published in the <u>Pike County Journal-Reporter</u> detailing Defendant O'Neill's drive from Punta Gorda, Florida to Zebulon, Georgia following Hurricane Charley on ARLA's website.  (Compl. ¶ 18.) According to the Complaint, Defendant O'Neill traveled this distance with his children in a car that suffered extensive damage during the Hurricane.  (Compl. ¶ 19.)  In concert with the posting of the excerpts from the newspaper article, Plaintiff posted hypothetical questions critical of Defendant O'Neill's judgment in traveling with his children in a damaged automobile.  (Compl. ¶ 20.)

In response to the postings on ARLA's website Defendant O'Neill initiated an action under O.C.G.A. § 17-6-90[2] by stating under oath before Magistrate Judge Killingsworth that "Johnson, Stephen Lee did posted (sic) on a website made (sic) false and malicious statements against my family." (Compl. ¶ 26.)  Following the procedure in O.C.G.A.

---

[2] This section of Title 17 provides for the issuance of "bonds for good behavior."  Pursuant to O.C.G.A. § 17-6-90, a judicial officer may issue a warrant against any person whose conduct justifies the belief that the safety of any person or the peace or property of a person is in danger.  O.C.G.A. § 17-6-90(a).  Upon the return of the warrant and for good cause shown, the court may require from the person a bond with sureties for his or her good behavior for a limited period of time.  <u>Id.</u>  The purpose, as with peace bonds, appears to be to provide for requiring an individual to post a bond on the condition that they not commit acts that result in a breach of the peace or damage to property.

§ 17-6-90 and based on this affidavit, Magistrate Judge Killingsworth set a probable cause hearing for September 21, 2004.  (Compl. ¶ 27.)  After conducting the probable cause hearing, Magistrate Judge Killingsworth issued a warrant entitled "Order of Arrest." (Compl. ¶ 28.)  Sheriff Thomas and Coroner Moody are charged with enforcing the warrant, which requires that they arrest Plaintiff and bring him before the Magistrate Court of Pike County.  (Compl. ¶ 9-10.)  Plaintiff, however, has not been arrested or subject to other criminal proceedings.  (Compl. ¶ 29.)

Meanwhile, on September 14, 2004, Defendant O'Neill's attorney, Jack L. Park, Jr., sent a letter to Plaintiff stating that if Plaintiff did not "cease and desist posting false and malicious information at the above-named website regarding Mr. O'Neill's family and his professional integrity as an attorney I will initiate proceedings and seek actual as well as punitive damages including attorney's fees in an amount to punish you, and to deter you, from like conduct in the future." (Compl. ¶ 23.)        After the issuance of the warrant, Defendant O'Neill's attorney sent a second letter on December 2, 2004 to Plaintiff, again threatening legal action if Plaintiff continued posting "false and malicious information" on his website.  (Compl. ¶ 25.)

6

C.    *The factual allegations supporting the claims against*
      *Defendant Boggs*

Plaintiff also posted information on ARLA's website critical of

Boggs's role as a DFACS supervisor.  Specifically, Plaintiff posted

information stating that, although Defendant Boggs was named DFACS

supervisor of the year in 2004, she was cited in 1997 in a federal

investigation for allowing children to be abused.  (Compl. ¶ 16.)  The

website currently includes pictures of Defendant Boggs against the

backdrop of a large black swastika with a black mustache superimposed

on Defendant Boggs's face. (Compl. ¶ 17.)

In response to the postings on Plaintiff's website, Defendant

Boggs sent a letter to Plaintiff on October 4, 2004 in which she

threatened legal action against Plaintiff for the "dissemination of false

and malicious information" to third parties via Plaintiff's website

regarding Defendant Bogg's professional status with the DFACS.

(Compl. ¶ 24.)  The letter was not on DFACS stationary and did not

purport to be sent on behalf of DFACS, although DFACS was copied on

the letter. (Pl.'s Ex. C.)  This action followed.

7

**V.    Analysis**

*A.    Plaintiff's Motion to Strike*

In support of his motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Defendant O'Neill attached an affidavit setting forth additional facts for the Court's consideration. Plaintiff moved to strike the affidavit [# 22].  Because none of the Defendants responded to Plaintiff's motion to strike, the Court deems the motion unopposed pursuant to Local Rule 7.1(B).

In considering a motion to dismiss the Court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff.  <u>Powell</u>, 945 F.2d at 375.  Defendant O'Neill's affidavit goes beyond the four corners of the Complaint and is not properly before the Court.  Accordingly, the Court **GRANTS** Plaintiff's motion to strike [# 22] and will not consider it at this stage of the proceedings.

*B.    Defendants' Motions to Dismiss*

1.    The Section 1983 claims against Defendants Boggs
and O'Neill

42 U.S.C. §1983 provides a private right of action where an

individual, acting under the color of state law, deprives the plaintiff of

"any rights, privileges, or immunities secured by the Constitution. . . ."

42 U.S.C. § 1983.  "Section 1983 alone creates no substantive rights;

rather, it provides a remedy for deprivations of rights established

elsewhere in the Constitution or federal laws."  Russell v. Fannin

County Sch. Dist., 784 F. Supp. 1576, 1580 (N.D. Ga. 1992)(O'Kelley,

C.J.).  Accordingly, in order to prevail on a Section 1983 claim a plaintiff

must show that she was deprived of a federal right by a state actor.

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

Plaintiff's allegations do not state a claim under Section 1983 against

either Defendant Boggs or O'Neill.

i.    Defendant O'Neill did not act under color of law

Section 1983 requires that parties charged with depriving the

plaintiff of a constitutional right be state actors.  Rayburn v. Hogue, 241

F.3d 1341, 1347 (11th Cir. 2001)("§ 1983 only provides for claims to

redress State action").  This requirement is a jurisdictional prerequisite

to a Section 1983 action.  Haynes v. Sacred Heart Hosp., 149 F.App'x

9

854, 855 (11th Cir. 2005).  Defendant O'Neill is a private citizen.

Although courts have recognized that a private citizen can be viewed as

a "state actor" for purposes of Section 1983, courts must exercise great

care in expanding Section 1983 to encompass private actors.  See

Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)("Only in rare

circumstances can a private party be viewed as a 'state actor' for section

1983 purposes."); Williams v. Carney, 157 F.App'x 103, 107 (11th Cir.

2005).

    In order to hold that a private party is a state actor for purposes

of Section 1983, one of three conditions must be met: "(1) the State has

coerced or at least significantly encouraged the action alleged to violate

the Constitution ('State compulsion test'); (2) the private parties

performed a public function that was traditionally the exclusive

prerogative of the State ('public function test'); or (3) the State had so

far insinuated itself into a position of interdependence with the private

parties that it was a joint participant in the enterprise ('nexus/joint

action test')."  Hogue, 241 F.3d at 1347 (internal citations omitted);

Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263,

1277 (11th Cir. 2003).  Neither of these three exceptions apply to

Defendant O'Neill.

10

The Complaint contains no allegations that the State coerced Defendant O'Neill to engage in any activity, that he performed a public function that was traditionally the prerogative of the State, or that a conspiracy exists between Defendant O'Neill and any of the other Defendants.  See Dennis v. Sparks, 449 U.S. 24, 28, 101 S. Ct. 183 (1980); Hogue, 241 F.3d at 1347; Harvey, 949 F.2d at 1133.   Rather, Plaintiff contends that by initiating judicial proceedings pursuant to O.C.G.A. § 17-6-90, Defendant O'Neill acted in concert with state actors to deprive Plaintiff of his constitutional rights.

A private party is a joint participant in an enterprise to deprive a plaintiff of his or her constitutional rights only where the governmental body and the private party are intertwined in a symbiotic relationship involving the specific conduct of which the plaintiff complains.  Hogue, 241 F.3d at 1348.   No such symbiotic relationship exists in this case. Defendant O'Neill sent Plaintiff the two letters as a private individual, and his actions in obtaining an arrest warrant and utilizing the state court legal process do not transform Defendant O'Neill from a private party to a state actor for purposes of Section 1983.  See generally Harvey, 949 F.2d at 1133-34 ("Use of the courts by private parties does not constitute an act under color of state law."); Cobb v. Georgia Power

11

Co., 757 F.2d 1248, 1251 (11th Cir. 1985)("[O]ne who has obtained a state court order or judgment is not engaged in state action merely because it used the state court legal process."); Tahfs v. Proctor, 316 F.3d 584, 593 (6th Cir. 2003)(holding that private litigant who obtained an *ex parte* personal protection order in a Michigan state court against another individual did not transform herself into a state actor for purposes of Section 1983); Johnson v. Miller, 680 F.2d 39, 40 (7th Cir. 1982)(Posner, J.)(holding that the filing of a criminal complaint with the police is the act of a private citizen).  To hold otherwise would expand the reach of Section 1983 to any private citizen who files an application for the issuance of an arrest warrant or utilizes the process for obtaining a bond for good behavior pursuant to O.C.G.A. § 17-6-90. Because the Court finds that Plaintiff fails to properly allege that Defendant O'Neill is a state actor for purposes of Section 1983, the Court **DISMISSES** the Section 1983 claims as to Defendant O'Neill. The Court, however, **GRANTS** Plaintiff leave to file an amended complaint properly alleging facts showing that Defendant O'Neill was engaged in a conspiracy or jointly participated with another state actor to deprive Plaintiff of his constitutional rights.

ii.     Defendant Boggs did not act under color of law

12

Defendant Boggs is a DFACS employee.  Although "'[s]tate employment is generally sufficient to render the defendant a state actor,'" West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988)(quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 n.18, 102 S. Ct. 2744, 2752 n.18 (1982)), not every action by a state employee, is an act under color of law.  Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1523 (11th Cir. 1995).  The dispositive issue in determining whether a state employee acted under color of law for purposes of Section 1983 is whether the individual acted pursuant to the power she possessed by virtue of her state employment, or whether she undertook the action as a private individual.  Id. at 1523; see also Almand v. Dekalb County, Ga., 103 F.3d 1510, 1513 (11th Cir. 1997).  As the Supreme Court explained over half a century ago, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." U.S. v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941).

Here, Plaintiff alleges that Defendant Boggs acted under color of law when she sent a letter to Plaintiff putting him on notice that she would seek legal action against him if he did not "cease and desist

13

posting false and malicious information at the above-named website

regarding Susan Boggs and my professional integrity as a Supervisor

with the Department of Family and Children Services. . . ."  (Compl. ¶

24.)  Defendant Boggs sent this letter after becoming aware of Plaintiff's

website, which contained statements criticizing Defendant Boggs's role

as a DFACS supervisor and picturing her as a Nazi.  The letter,

however, is not on DFACS stationary, is not signed in Boggs's official

capacity, and, most importantly, does not imply that DFACS would

prosecute or initiate legal proceedings against Plaintiff.  Rather, the

letter states that Defendant Boggs considered the postings on Plaintiff's

website libel or slander, and that *she* would instigate legal proceedings

*through her attorney* against Plaintiff if he continued posting such

statements on his website.  This threat of private civil litigation is not

made possible by virtue of Defendant Boggs's authority as a DFACS

supervisor. Accordingly, the Court finds that Defendant Boggs was

acting as a private individual, rather than pursuant to her authority as

a DFACS supervisor, when she sent the letter to Plaintiff.  The Court

**DISMISSES** the Section 1983 claims against Defendant Boggs.  The

Court, however, grants Plaintiff leave to amend his Complaint as to

Defendant Boggs.[3]


      2.      The Section 1983 claims against Magistrate Judge
Killingsworth, Coroner Moody and Sheriff Thomas

Plaintiff brought claims against Magistrate Judge Killingsworth in her

individual capacity for monetary damages and in her official capacity for

injunctive and declaratory relief.  Sheriff Thomas and Coroner Moody are

only sued in their official capacities for equitable relief.

      i.      The request for monetary damages against Magistrate
Judge Killingsworth

Plaintiff brings claims for damages against Magistrate Judge

Killingsworth in her individual capacity.  As a general rule, state judges are

absolutely immune from liability for damages under Section 1983 for acts

taken in their judicial capacity.[4]  <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57, 98

---

[3] Although the Court does not address whether the Complaint properly alleges that Defendant Boggs violated a federal right, the Court notes that the lone act of sending a letter to Plaintiff is not the type of informal system of censorship designed to restrain speech prior to its publication that could withstand a thorough analysis under <u>Weaver v. Bonner</u>, 309 F.3d 1312 (11th Cir. 2002), and <u>Bantam Books, Inc. v. Sullivan</u>, 372 U.S. 58, 83 S. Ct. 631 (1963).

[4] Judicial Immunity is not a bar to prospective injunctive relief against a state judicial officer acting in her judicial capacity.  <u>See</u> <u>Pulliam v. Allen</u>, 466 U.S. 522, 104 S. Ct. 1970 (1984).

S. Ct. 1099, 1104-05 (1978); <u>Harris v. Deveaux</u>, 780 F.2d 911, 914 (11th Cir.

1986).  "A judge will not be deprived of immunity because the action he took

was in error, was done maliciously, or was in excess of his authority. . . ."

<u>Stump</u>, 435 U.S. at 356-57, 98 S. Ct. at 1105. "This doctrine, which is vital to

the proper administration of justice, is founded on the notion that a judge

must be free to act upon his own convictions, without apprehension of

personal consequences to himself." <u>Emory v. Peeler</u>, 756 F.2d 1547, 1552-53

(11th Cir. 1985)(citations and internal quotation marks omitted).  Only where

a judge acts in clear absence of all jurisdiction is he or she not immune from

liability for actions taking in his or her judicial capacity.  <u>Id.</u>; <u>Harris</u>, 780 F.2d

at 914.  A judge acts in clear absence of all jurisdiction where he or she

completely lacks subject matter jurisdiction over the dispute.  <u>Harris</u>, 780

F.2d at 916.

    Here, no dispute exists as to whether Magistrate Judge Killingsworth

acted in her judicial capacity when she dealt with Plaintiff; rather, Plaintiff

contends that the warrant issued by Magistrate Judge Killingsworth was

issued in clear absence of all jurisdiction.  Specifically, Plaintiff argues that

because the action taken by Magistrate Judge Killingsworth was equitable in

nature, and magistrate judges in Georgia have no equitable powers,

16

Defendant Killingsworth, therefore, lacked subject matter jurisdiction and should not be entitled to a grant of judicial immunity.

The "Order of Arrest" incorporated into the Complaint was issued pursuant to the Georgia statutory procedure governing bonds for good behavior, O.C.G.A. § 17-6-90.  The statute authorizes "[a]ny judicial officer . . . upon the information of others under oath . . . [to] issue a warrant against any person in the county whose conduct is such as to justify the belief that the safety of any one or more persons in the county or the peace or property of the same is in danger of being injured or disturbed thereby."  O.C.G.A. § 17-6-90.  The Georgia Code expressly provides that magistrate judges have jurisdiction over the issuance of warrants and other proceedings related to bonds for good behavior.  O.C.G.A. § 15-10-2.  Accordingly, Magistrate Judge Killingsworth had subject matter jurisdiction over the case.  See Emory, 756 F.2d at 1553; Mauldin v. Burnette, 89 F. Supp. 2d 1371, 1379 (M.D. Ga. 2000).

The fact that the issuance of the warrant may have been an unconstitutional prior restraint of Plaintiff's First Amendment rights does not defeat judicial immunity.  See Stump, 435 U.S. at 356-57, 98 S. Ct. at 1105.  Accordingly, the doctrine of judicial immunity bars Plaintiff's Section 1983 claim for money damages against Defendant Killingsworth in her individual

17

capacity, and the Court **GRANTS** the motion to dismiss as to Plaintiff's

claims against Magistrate Judge Killingsworth in her individual capacity.

> ii.     The request for declaratory and injunctive relief as to
>         Magistrate Judge Killingsworth, Coroner Moody and Sheriff
>         Thomas in their official capacities

Having disposed of the monetary claims against Magistrate Judge

Killingsworth, the Court turns to the equitable claims asserted against

Magistrate Judge Killingsworth, Coroner Moody and Sheriff Thomas in their

official capacities.  Plaintiff bases his equitable claims on the issuance of the

warrant by Magistrate Judge Killingsworth.  Plaintiff contends that the

warrant is an unconstitutional prior restraint of his speech and requests that

the Court declare the warrant void, enjoin its enforcement, and prohibit

Plaintiff's arrest for information he posts on his website.  Plaintiff does not

challenge the constitutionality of the Georgia statute pursuant to which

Magistrate Judge Killingsworth issued the warrant.

The threshold question is whether a federal district court sitting in

equity, should interfere with a proceeding in a state court and enjoin a state

judge from undertaking future actions.  In <u>Younger v. Harris</u>, 401 U.S. 37, 91

S. Ct. 746 (1971), the United States Supreme Court reaffirmed the general

rule that federal courts of equity should abstain from interfering with state

proceedings where the moving party has an adequate remedy at law and will

not suffer irreparable injury if denied equitable relief in the federal courts.

See O'Shea v. Littleton, 414 U.S. 488, 499, 94 S. Ct. 669, 677-78

(1974)(discussing Younger); Pompey v. Broward County, 95 F.3d 1543, 1546

(11th Cir. 1996). "The Younger abstention doctrine derives from 'the vital

consideration of comity between the state and national governments . . . '"

Pompey, 95 F.3d at 1546 (citing Luckey v. Miller, 976 F.2d 673, 676 (11th Cir.

1992)).  As the Eleventh Circuit stated in Pompey:

> Neither federal district courts nor federal courts of appeals may
> usurp the authority and function of the Supreme Court and state
> appellate courts to review state court proceedings.  The state courts
> are courts of equal dignity with all of the federal "inferior courts" .
> . . and state courts have the same duty to interpret and apply the
> United States Constitution as we do.  If the state courts err in that
> respect, the remedy lies in review by the Supreme Court . . . .
> Federal "inferior courts" have no more business issuing supervisory
> injunctions to safeguard federal constitutional rights in state court
> proceedings than state courts have issuing such injunctions to
> safeguard federal constitutional rights in federal court proceedings.

Id., at 1550; see also Hoover v. Wagner, 47 F.3d 845, 850-51 (7th Cir.

1995)(Posner, J.).

The same principles of comity, equity, and federalism involved in

Younger, Pompey, and Hoover, dictate that the Court abstain from

intervening in this proceeding.  Plaintiff seeks an injunction against a

state judge and the state officers charged with the enforcement of a

warrant.  Put simply, Plaintiff wants a federal district court to

19

intervene in a state proceeding and tell the state judge that her actions

in issuing a warrant pursuant to O.C.G.A. § 17-6-90 were

unconstitutional, that such warrant is unenforceable, and that she

should refrain from issuing additional warrants based on the

information posted on Plaintiff's website because such warrants are

prior restraints of Plaintiff's  rights under the First Amendment.  The

relief Plaintiff requests would allow immediate appeal from state court

proceedings to a United States District Court, rather than require

Plaintiff to assert his claim in the state appellate courts and seek

review by the United States Supreme Court.  Moreover, if Magistrate

Judge Killingsworth proceeded to issue another warrant for Plaintiff's

arrest, the Court would be faced with the prospect of having to hold her

in contempt.  Rather than initiate an action for declaratory and

injunctive relief in federal court, the proper procedure for Plaintiff to

challenge the warrant is to raise his federal constitutional issues in the

state proceedings.  Plaintiff is entitled to a hearing under O.C.G.A. §

17-6-90 in which he can raise his federal claims, and may appeal a

decision under O.C.G.A. § 17-6-90(b) to the superior court.[5]  See

O.C.G.A. § 17-6-90; see also Wayne Purdom, Georgia Magistrate Court

Handbook with Forms, § 18-4 (4th ed. 2002).  Thus, abstaining from

intervening in the state proceeding does not leave Plaintiff without an

avenue for challenging the warrant or otherwise raising his First

Amendment concerns.  Accordingly, the Court **GRANTS** the motions to

dismiss as to the equitable claims against Magistrate Judge

Killingsworth, Sheriff Thomas, and Coroner Moody and **DISMISSES**

**without prejudice** Plaintiff's claims for declaratory and injunctive

relief.

**V.    Conclusion**

The Court **GRANTS** the motions to dismiss of Defendants Boggs,

O'Neill, Killingsworth, Moody and Thomas [# 14, 17, 44 & 45].  The Court

**DISMISSES** all Section 1983 claims against Defendants Boggs, O'Neill,

Killingsworth, Moody and Thomas.  Additionally, the Court **DISMISSES**

**without prejudice** all state law claims against Defendants Boggs, O'Neill,

Killingsworth, Moody and Thomas.  The Court **GRANTS** Plaintiff leave to

---

[5]  To the extent that Magistrate Judge Killingsworth did not follow the proper procedure outlined in O.C.G.A. § 17-6-90 after the issuance of the warrant, Plaintiff should seek the appropriate relief in state court.

amend his Complaint as to his claims against Defendants O'Neill and Boggs consistent with this Order.  Plaintiff shall file any amended complaint within twenty (20) days of entry of this Order.  The Court **DENIES** Plaintiff's motion for a preliminary injunction [# 2].  Finally, the Court **GRANTS** Plaintiff's motion to strike [# 22] and motion for leave to file excess pages [# 19].

     **SO ORDERED**, this ___24th___ day of March, 2006.


               /s/ Jack Camp_____

               JACK T. CAMP

               UNITED STATES DISTRICT JUDGE